McCULLOUGH, Judge.
 

 *661
 
 Norman Glenn ("plaintiff") appeals from the trial court's order to dismiss in part and order granting summary judgment in favor of Edgar Johnson ("Edgar"), Everette W. Johnson, Jr. ("Everette"), and New Red Mountain Missionary Baptist Church, Inc. (the "Church") (together "defendants"). Upon review, we affirm.
 

 I.
 
 Background
 

 At all times relevant to this appeal, the Church was a nonprofit corporate entity operating as a church in Durham, Edgar was a member of the Church and Chairman of the Board of Trustees, Everette was a member of the Church and Chairman of the Board of Deacons, and plaintiff was a member of the church. Plaintiff also served as the treasurer of the Church and was a member of the Board of Trustees. It was disagreements between defendants and plaintiff while he was treasurer that allegedly resulted in harm to plaintiff and caused plaintiff to initiate this action against defendants.
 

 That contentious relationship is summarized as follows: The Church bylaws require the Board of Trustees to obtain an audit annually. Edgar proposed an audit at the quarterly Church conference in July 2012 and the proposal was approved by the Church body. Yet, over plaintiffs' objection, that vote of approval was later rescinded at the quarterly Church conference in October 2012 after concerns were raised over the cost of an audit. Also over plaintiff's objection, Edgar then moved to have a less costly "compilation" of the Church's financial records completed. After Edgar's motion carried at the October 2012 conference, in November 2012, Edgar requested that plaintiff write a check for a $250 retainer for
 
 *662
 
 the accountant who would perform the compilation. Plaintiff refused to do so. Aware of Edgar's request in November 2012, in early December 2012, the Board of Deacons, chaired by Everette, sent a letter to plaintiff requesting that he write the retainer check. Plaintiff again refused to do so and did not respond. As a result of plaintiff's repeated refusal, the Board of Deacons sent plaintiff another letter in early January 2013 requesting that plaintiff meet with the Board of Deacons to discuss the matter. Plaintiff, however, did not attend the meeting. At the quarterly Church conference in January 2013, the Board of Deacons then read and presented a letter to the Church body asking for plaintiff's resignation from the position of treasurer. Plaintiff, who was surprised by the request, then stood up in front of the Church body, handed over his keys, and renounced further responsibilities as treasurer. Since that time, plaintiff has sought on numerous occasions for the Church to clarify the reasons the Board of Deacons requested his resignation, but defendants never did so to the satisfaction of plaintiff.
 

 Based on these facts, plaintiff asserted the following claims for relief in the complaint against defendants filed on 20 December 2013
 

 (1) Injunctive relief to enjoin the Church from "conducting any financial transactions by the treasurer until such time as it has legally replaced plaintiff as treasurer following the bylaws and established church procedure [ ]" and to enjoin the individual defendants from "in any way retaliating against plaintiff, or defaming plaintiff[.]"
 

 (2) Libel and/or slander
 
 per se
 
 because "[t]he acts of defendants ... have been committed with malice and intent to cause plaintiff to suffer humiliation and damage his reputation within the church community. They have been defamatory
 
 per se,
 
 constituting publications by the defendants to third persons which, when considered alone ... untruthfully charge that plaintiff has committed wrongdoing that amounts to a crime or otherwise has subjected plaintiff to ridicule, contempt, or disgrace in his church community."
 

 (3) Libel and/or slander
 
 per quod
 
 because "defendants' actions have constituted
 
 *69
 
 publications by defendants of statements to third parties which, when considered with innuendo, colloquium, and explanatory circumstances, have become defamatory, causing plaintiff
 
 *663
 
 to suffer ridicule, contempt, or disgrace, and further causing special damages...."
 

 (4) Negligent infliction of emotional distress ("NIED") in that "defendants negligently engaged in the ... wrongful conduct. It was reasonably foreseeable that said conduct would cause the plaintiff severe emotional distress, and the conduct did in fact cause the plaintiff severe emotional distress, necessitating professional treatment being rendered to plaintiff...."
 

 (5) Intentional infliction of emotional distress ("IIED") in that the "conduct of defendants was extreme and outrageous, intended to cause severe emotional distress, or committed with a reckless indifference to the likelihood that such conduct would cause severe emotional distress, and which did cause severe emotional distress to the plaintiff."
 

 Defendant further alleged grounds existed to justify awards of compensatory, special, and punitive damages.
 

 On 24 February 2014, the Church filed a motion to dismiss and answer and Edgar and Everette filed a separate joint motion to dismiss and answer. In response, plaintiff filed an affidavit on 7 April 2014. Plaintiff's affidavit reasserted the factual bases of his claims and included copies of the Church constitution and bylaws, letters to him from the Board of Deacons, and documentation of Church meetings as attachments to support his claims.
 

 Following a 7 April 2014 hearing in Orange County Superior Court on defendants' motions to dismiss, on 29 April 2014, Judge R. Allen Baddour, Jr., filed an order granting defendants' motions to dismiss in part after determining that plaintiff "failed to state claims for ... (1) [l]ibel and slander per se against all defendants; and (2) [l]ibel and slander per quod against defendants Everette ... and [the Church], to the extent that such claim(s) are founded upon statements made by ... Everette...." Thus, the judge dismissed those claims with prejudice and allowed plaintiff's other claims to proceed.
 

 Defendants then filed motions to exclude expert testimony and for summary judgment on the remaining claims on 9 January 2015. In support of the summary judgment motions, defendants submitted numerous depositions with exhibits for the trial court's consideration. Following a 9 February 2015 hearing on defendants' motions for summary judgment,
 
 *664
 
 on 24 February 2015, Judge Elaine M. O'Neal Bushfan filed an order granting summary judgment in favor of defendants. Specifically, the trial court "determined that there are no genuine issues of material fact and that defendants are entitled to judgment as a matter of law as to all of plaintiff's remaining claims for [NIED], [IIED], slander
 
 per quod,
 
 injunctive relief and punitive damages."
 

 Plaintiff filed notice of appeal on 18 March 2015 from the 29 April 2014 order dismissing some of his claims and from the 24 February 2015 summary judgment order.
 

 II.
 
 Discussion
 

 On appeal, plaintiff contends the trial court erred in entering summary judgment in favor of defendants on his claims for NIED, IIED, and libel and/or slander
 
 per quod.
 
 We address plaintiff's arguments in order.
 

 As noted above, plaintiff also appealed from the 29 April 2014 order dismissing his libel and slander
 
 per se
 
 claims against all defendants and his libel and slander
 
 per quod
 
 claims against Everette and the Church. Plaintiff, however, has not raised any issues in his brief on appeal concerning the dismissal order and has abandoned any issues concerning the dismissed claims.
 
 See
 
 N.C. R.App. P. 28(b)(6) (2016) ("Issues not presented in a party's brief, or in support of which no reason or argument is stated, will be taken as abandoned."). Plaintiff has also abandoned any issues concerning summary judgment on his claims for injunctive relief and punitive damages by failing to raise arguments on appeal.
 

 *70
 

 Standard of Review
 

 "Our standard of review of an appeal from summary judgment is
 
 de novo;
 
 such judgment is appropriate only when the record shows that 'there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.' "
 
 In re Will of Jones,
 

 362 N.C. 569
 
 , 573,
 
 669 S.E.2d 572
 
 , 576 (2008) (quoting
 
 Forbis v. Neal,
 

 361 N.C. 519
 
 , 524,
 
 649 S.E.2d 382
 
 , 385 (2007) ).
 

 In order to prevail on a motion for summary judgment, a moving party meets its burden by proving that an essential element of the opposing party's claim is non-existent, or by showing through discovery that the opposing party cannot produce evidence to support an essential element of his claim or cannot surmount an affirmative defense which would bar the claim. Once the moving party meets this burden, the burden is then on the opposing party to show that a genuine issue of material fact exists.... If
 
 *665
 
 the opponent fails to forecast such evidence, then the trial court's entry of summary judgment is proper.
 

 Finley Forest Condo. Ass'n v. Perry,
 

 163 N.C.App. 735
 
 , 738-39,
 
 594 S.E.2d 227
 
 , 230 (2004) (internal quotation marks and citations omitted).
 

 Emotional Distress Claims
 

 Plaintiff first contends the trial court erred by granting defendants' motions for summary judgment as to his NIED and IIED claims. Plaintiff claims he has raised genuine issues of material fact as to the essential elements of both claims.
 

 NIED
 

 We first address plaintiff's argument with respect to his claim for NIED.
 

 Our cases have established that to state a claim for negligent infliction of emotional distress, a plaintiff must allege that (1) the defendant negligently engaged in conduct, (2) it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress (often referred to as "mental anguish"), and (3) the conduct did in fact cause the plaintiff severe emotional distress. Although an allegation of ordinary negligence will suffice, a plaintiff must also allege that severe emotional distress was the foreseeable and proximate result of such negligence in order to state a claim; mere temporary fright, disappointment or regret will not suffice. In this context, the term "severe emotional distress" means any emotional or mental disorder, such as, for example, neurosis, psychosis, chronic depression, phobia, or any other type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so.
 

 Johnson v. Ruark Obstetrics and Gynecology Associates, P.A.,
 

 327 N.C. 283
 
 , 304,
 
 395 S.E.2d 85
 
 , 97 (1990) (internal citations omitted). Thus, summary judgment in favor of defendants on the NIED claim is proper where the evidence does not establish negligence by defendants or establishes that the alleged negligent conduct was not the foreseeable and proximate cause of plaintiff's severe emotional distress.
 
 Robblee v. Budd Services, Inc.,
 

 136 N.C.App. 793
 
 , 795,
 
 525 S.E.2d 847
 
 , 849,
 
 disc. review denied,
 

 352 N.C. 676
 
 ,
 
 545 S.E.2d 228
 
 (2000).
 

 *666
 
 Now on appeal, plaintiff asserts he has suffered severe emotional distress that was both a foreseeable result of and proximately caused by defendants' negligent conduct. Plaintiff cites various cases and points to evidence tending to show that there was sufficient evidence of severe emotional distress for the questions of foreseeability and proximate cause to be determined by a jury.
 

 Upon review of the record, it is clear that there was evidence in the record from which the jury could determine plaintiff had suffered severe emotional distress. Furthermore, plaintiff is correct that foreseeability and proximate cause are generally questions for the jury.
 
 See
 

 Acosta v. Byrum,
 

 180 N.C.App. 562
 
 , 568,
 
 638 S.E.2d 246
 
 , 251 (2006) ("Questions of proximate cause and foreseeability are questions of fact to be decided by the jury."). Plaintiff's arguments on appeal, however, only address the second and third elements of NIED. Plaintiff never clearly
 
 *71
 
 identifies in what way defendants' conduct was negligent.
 

 It is clear from the elements listed above that "[a] claim of negligent infliction of emotional distress requires proof of negligent conduct."
 
 Pittman v. Hyatt Coin & Gun, Inc.,
 

 224 N.C.App. 326
 
 , 330,
 
 735 S.E.2d 856
 
 , 859 (2012). In reviewing a trial court's grant of a motion to dismiss a NIED claim, this Court has explained that "[t]he first element of an NIED claim requires allegations that the defendant failed to exercise due care in the performance of some legal duty owed to [the] plaintiff under the circumstances [.]"
 
 Horne v. Cumberland Cnty. Hosp. Sys., Inc.,
 

 228 N.C.App. 142
 
 , 148,
 
 746 S.E.2d 13
 
 , 19 (2013) (internal quotation marks and citation omitted). "Generally, where the facts are undisputed, [t]he issue of whether a duty exists is a question of law for the court."
 
 Finley Forest Condo. Ass'n,
 

 163 N.C.App. at 739
 
 ,
 
 594 S.E.2d at 230
 
 (internal quotation marks and citation omitted).
 

 In
 
 Horne,
 
 the plaintiff's failure to allege such a legal duty owed by the defendant to the plaintiff was fatal to the plaintiff's NIED claim.
 
 Horne,
 

 228 N.C.App. at 149
 
 ,
 
 746 S.E.2d at 19
 
 . In addition to failing to allege a legal duty, this Court also explained in
 
 Horne
 
 that "[b]eyond the conclusory assertion that '[the defendant] negligently engaged in the aforementioned conduct against [the] plaintiff,' [the] plaintiff's complaint recounts only
 
 intentional
 
 conduct on the part of [the defendant]."
 

 Id.
 

 (alterations in original omitted) (emphasis in original). As a result, the plaintiff in
 
 Horne
 
 "failed to properly plead an element essential to her NIED claim[ ]" because "[a]llegations of intentional conduct, ... even when construed liberally on a motion to dismiss, cannot satisfy the negligence element of an NIED claim."
 

 Id.
 

 *667
 
 Although defendants did not move to dismiss plaintiff's NIED claim in the present case,
 
 Horne
 
 is instructive in our review of the trial court's grant of defendants' motions for summary judgment.
 

 The evidence in this case is that plaintiff was a member of the Church and served as treasurer and a member of the Board of Trustees. Edgar and Everette were also members of the Church and members of church boards. As in
 
 Horne,
 
 plaintiff does not assert that defendants owed him a legal duty and fails to cite any authority showing that a legal duty exists between church members. The only conceivable duty owed by defendants to plaintiff was to act in accordance with the bylaws of the Church, but it is clear from the record that any conduct by the individual defendants in contravention to the bylaws was intentional, rather than negligent.
 

 In arguing the trial court erred in granting summary judgment for defendants on the NIED claim, plaintiff glosses over the first element of NIED, stating that "[he] satisfie[d] the first two elements by offering evidence showing that it was reasonably foreseeable that such negligence would proximately cause [his] severe emotional distress." Yet, as noted above, plaintiff never identifies defendants' negligent conduct. Even in his NIED claim in the complaint, plaintiff merely incorporates the factual allegations and asserts as follows:
 

 28. The defendants negligently engaged in the above wrongful conduct. It was reasonably foreseeable that said conduct would cause the plaintiff severe emotional distress, and the conduct did in fact cause the plaintiff severe emotional distress, necessitating professional treatment being rendered to plaintiff....
 

 We hold these conclusory allegations and the evidence presented are insufficient to avoid summary judgment.
 

 Where defendant failed to allege a duty owed by defendants and there is no evidence of negligent acts by defendants, plaintiff has failed to establish a
 
 prima facie
 
 case of NIED and summary judgment was proper.
 
 See
 

 Smith-Price v. Charter Behavioral Health Sys.,
 

 164 N.C.App. 349
 
 , 354,
 
 595 S.E.2d 778
 
 , 782 (2004) (Summary judgment was proper because an essential element of NIED was unsupported by the evidence where the plaintiff presented no evidence that the defendant owed a duty of care or that there was a breach such a duty.) Thus, we hold the trial court did not err in entering summary judgment in favor of defendants on plaintiff's NIED claim.
 

 *72
 

 *668
 

 IIED
 

 We next address plaintiff's argument regarding to his claim for IIED. "A claim for [IIED] exists when a defendant's conduct exceeds all bounds usually tolerated by decent society and the conduct causes mental distress of a very serious kind."
 
 Watson v. Dixon,
 

 130 N.C.App. 47
 
 , 52,
 
 502 S.E.2d 15
 
 , 19 (1998) (internal quotation marks and citations omitted). Broken down into its elements, IIED consists of: "(1) extreme and outrageous conduct, (2) which is intended to cause and does cause (3) severe emotional distress to another. The tort may also exist where defendant's actions indicate a reckless indifference to the likelihood that they will cause severe emotional distress."
 
 Dickens v. Puryear,
 

 302 N.C. 437
 
 , 452,
 
 276 S.E.2d 325
 
 , 335 (1981).
 

 Although plaintiff acknowledges that, "[a]s to the first element, a determination at summary judgment of whether 'alleged acts may be reasonably regarded as extreme and outrageous is initially a question of law [,]' "
 
 Phillips v. Rest. Mgmt. of Carolina, L.P.,
 

 146 N.C.App. 203
 
 , 213,
 
 552 S.E.2d 686
 
 , 693 (2001) (quoting
 
 Shreve v. Duke Power Co.,
 

 85 N.C.App. 253
 
 , 257,
 
 354 S.E.2d 357
 
 , 359 (1987) ),
 
 disc. rev. denied,
 

 355 N.C. 214
 
 ,
 
 560 S.E.2d 132
 
 (2002), plaintiff asserts the trial court in this case could not determine, as a matter of law, that defendants' conduct did not rise to the level of "extreme and outrageous" and, therefore, the issue should have been determined by the jury, along with the issues of intent, or reckless indifference, and severe emotional distress.
 
 See also
 

 Johnson v. Bollinger,
 

 86 N.C.App. 1
 
 , 6,
 
 356 S.E.2d 378
 
 , 381-82 (1987) ("[T]his Court held the initial determination of whether conduct is extreme and outrageous is a question of law for the court: If the court determines that it may reasonably be so regarded, then it is for the jury to decide whether, under the facts of a particular case, defendants' conduct ... was in fact extreme and outrageous.") (internal quotation marks, citation, and emphasis in original omitted). Consequently, plaintiff concludes summary judgment on his IIED claim was improper. In support of his arguments, defendant relies solely on
 
 Phillips,
 
 in which the plaintiff alleged IIED after consuming food that had been spit on.
 
 Phillips,
 

 146 N.C.App. at 207
 
 ,
 
 552 S.E.2d at 689
 
 . On appeal of the trial court's grant of summary judgment in favor of the restaurant owner/operator, this Court agreed that the trial court erred in granting summary judgment in favor of the owner/operator.
 
 Id.
 
 at 213,
 
 552 S.E.2d at 693
 
 . Recognizing that other states had made similar conduct criminal or determined similar conduct toward prisoners was unconstitutional, this Court "[could not] say, as a matter of law, that a food preparer surreptitiously spitting in food intended for a patron's consumption [did] not rise to the level of
 
 *669
 
 'extreme and outrageous.' "
 

 Id.
 

 We are not convinced that the present case is comparable to
 
 Phillips.
 

 This Court has explained that
 

 [c]onduct is extreme and outrageous when it is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. The behavior must be more than mere insults, indignities, threats, and plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate or unkind.
 

 Smith-Price,
 

 164 N.C.App. at 354
 
 ,
 
 595 S.E.2d at 782
 
 (internal quotation marks, citations, and alterations in original omitted).
 

 In this case, plaintiff asserts that the same conduct that was alleged to be the basis of his NIED claim is intentional, extreme, and outrageous to support a claim of IIED. Specifically, after incorporating by reference the factual allegations, plaintiff asserted as follows in his complaint:
 

 31. The above-described conduct of defendants was extreme and outrageous, intended to cause severe emotional distress, or committed with a reckless indifference to the likelihood that such conduct would cause severe emotional distress, and which did cause severe emotional distress to the plaintiff.
 

 The conduct by defendants alleged to be extreme and outrageous includes the following:
 

 *73
 
 requesting that plaintiff, as treasurer of the Church, write a check for a compilation although plaintiff was against conducting a compilation instead of a full audit; requesting through letters that plaintiff write a check and meet with the Board of Deacons to discuss his refusal to write a check; requesting plaintiff's resignation through a letter read and presented to the Church body at the quarterly conference; ignoring, refusing, or laughing at efforts by plaintiff for reconciliation or mediation.
 

 These acts by defendants are simply not comparable to spitting in food and we now hold that, as a matter of law, plaintiff has failed to allege or present evidence that defendants' conduct in this case rose to the level of extreme and outrageous. As a result, the trial court did not err in entering summary judgment in favor of defendant on plaintiff's IIED claim.
 

 *670
 

 Defamation Claims
 

 In the last issue on appeal, plaintiff contends the trial court erred in granting summary judgment as to his claims for libel and slander
 
 per quod.
 
 We disagree.
 

 We begin our analysis of this final issue by noting that it not entirely clear what ruling by the trial court is being challenged. In his brief on appeal, plaintiff asserts that "Judge Bushfan allowed dismissal of all claims, including
 
 per quod
 
 defamation claims[,]" and contends that "Judge Bushfan, ruling on Rule 56 motions, should have denied those motions as to defamation
 
 per quod,
 
 because she had actual evidence before her which went beyond the mere allegations of the complaint and created genuine issues of material fact as to
 
 per quod
 
 defamation among all three defendants." However, Judge Bushfan did not dismiss any claims, but instead granted summary judgment in favor of defendants. Moreover, the only defamation claims addressed in the summary judgment order were plaintiff's libel and slander
 
 per quod
 
 claims against Edgar and the Church, as the other defamation claims were previously dismissed by Judge Baddour. It is the grant of summary judgment on the libel and slander
 
 per quod
 
 claims against Edgar and the Church that we now review on appeal.
 

 Libel and slander are both forms of defamation-libel is written and slander is oral.
 
 Aycock v. Padgett,
 

 134 N.C.App. 164
 
 , 165,
 
 516 S.E.2d 907
 
 , 909 (1999). " 'To be actionable, a defamatory statement must be false and must be communicated to a person or persons other than the person defamed.' "
 
 Daniels v. Metro Magazine Holding Co., L.L.C.,
 

 179 N.C.App. 533
 
 , 538-39,
 
 634 S.E.2d 586
 
 , 590 (2006) (quoting
 
 Andrews v. Elliot,
 

 109 N.C.App. 271
 
 , 274,
 
 426 S.E.2d 430
 
 , 432 (1993) ),
 
 appeal dismissed and disc. rev. denied,
 

 361 N.C. 692
 
 ,
 
 654 S.E.2d 251
 
 (2007) ;
 
 see also
 

 Desmond v. News and Observer Pub. Co.,
 
 ---N.C.App. ----, ----,
 
 772 S.E.2d 128
 
 , 135,
 
 appeal dismissed and disc. rev. denied,
 
 - -- N.C. ----,
 
 776 S.E.2d 195
 
 (2015).
 

 Where the injurious character of the words do not appear on their face as a matter of general acceptance, but only in consequence of extrinsic, explanatory facts showing their injurious effect, such utterance is actionable only
 
 per quod.
 
 Where the words spoken or written are actionable only
 
 per quod,
 
 the injurious character of the words and some special damage must be pleaded and proved.
 

 Beane v. Weiman Co.,
 

 5 N.C.App. 276
 
 , 278,
 
 168 S.E.2d 236
 
 , 237-38 (1969).
 

 *671
 
 In this case, it is not clear what plaintiff contends to be libelous or slanderous. Plaintiff identifies both the letter from the Board of Deacons requesting his resignation that was read and presented at the Church conference and prior statements by Edgar concerning whether plaintiff had used church funds to purchase a home and an automobile. Plaintiff then asserts that the sudden demand that he resign after he refused to write a check fueled innuendo and speculation that he must have done something wrong. Plaintiff further asserts that any misperception was magnified by the refusal of the Board of Deacons and Board of Trustees to explain their actions and to dispel any misunderstandings about plaintiff's resignation.
 

 Yet, upon review of the record, there is no evidence of any conduct that could be construed as libel or slander
 
 per quod.
 
 First, concerning Edgar's prior questions insinuating plaintiff's misuse of church
 
 *74
 
 funds allegedly made in 2009 or early 2010, there is no evidence that the statements were made to anyone other than plaintiff. In fact, plaintiff indicated Edgar's statements were made directly to him. Furthermore, any defamation claim based on those statements in 2009 or early 2010 is now barred by the statute of limitations.
 
 See
 
 N.C. Gen.Stat. § 1-54(3) (2015) (providing a one year statute of limitations for libel and slander). Second, concerning the Board of Deacons' letter requesting plaintiff's resignation, Edgar was not a member of the Board of Deacons and plaintiff has failed to identify any false statement in the letter.
 

 As the individual defendants assert, plaintiff's "primary argument seems to be that the letter, [or defendants in general,] did not do enough to prevent others from speculating that [p]laintiff may have done something wrong." But where there is no evidence of actionable defamation in the record, the trial court did not err in granting summary judgment in favor of defendants on the claims of libel and slander
 
 per quod
 
 against Edgar and the Church.
 

 III.
 
 Conclusion
 

 For the reasons discussed above, we hold the trial court did not err in entering summary judgment on plaintiffs' claims for NIED, IIED, or defamation
 
 per quod.
 

 AFFIRMED.
 

 Judges DIETZ and TYSON concur.